IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 15, 2020

**RYAN D. BUFORD v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2011-B-1815     Steve R. Dozier, Judge**

_____

**No. M2019-00424-CCA-R3-PC**

_____

The Petitioner, Ryan D. Buford, appeals the denial of his petition for post-conviction relief, asserting that he received ineffective assistance of trial and appellate counsel.  After review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT W. WEDEMEYER, J., joined.

Wesley Clark, Nashville, Tennessee, for the appellant, Ryan D. Buford.

Herbert H. Slatery III, Attorney General and Reporter; James E. Gaylord, Senior Assistant Attorney General; Glenn Funk, District Attorney General; and J. Wesley King, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The Petitioner and three codefendants were charged with first degree felony murder, especially aggravated robbery, and tampering with evidence.  The proof at trial showed that the victim was shot to death after a codefendant arranged to meet him for a "date" but to actually have him robbed by her confederates, including the Petitioner.  State v. Ryan D. Buford, No. M2014-01265-CCA-R3-CD, 2015 WL 9488975, at *1 (Tenn. Crim. App. Dec. 29, 2015), perm. app. denied (Tenn. May 6, 2016).  The Petitioner and the three codefendants all gave statements to the police and, in his statement, the Petitioner admitted that he was the shooter.  Id.  The Petitioner was convicted as charged and sentenced to an

effective term of life imprisonment.  Id. at *7.  On direct appeal, the Petitioner argued that the trial court erred in denying his motion to suppress his statement to police and that the evidence was insufficient to support his convictions because a codefendant's testimony was not sufficiently corroborated.  Id. at *1.  This court affirmed the judgments of the trial court, and the Tennessee Supreme Court denied the Petitioner's application for permission to appeal.  Id.

The Petitioner filed a pro se petition for post-conviction relief and, subsequently, post-conviction counsel filed two amended petitions.  In his petitions, the Petitioner raised various claims of ineffective assistance of counsel.[1]  Relevant to this appeal, the Petitioner alleged that: (1) his counsel at the suppression hearing was ineffective for failing to put on evidence to corroborate his testimony concerning his intoxication; (2) his counsels at trial were ineffective for failing communicate with him, review the transcript from the suppression hearing, and present a cohesive theory of defense; and (3) his appellate counsel was ineffective for failing to include a transcript from the suppression hearing in the record on appeal.  The post-conviction court conducted an evidentiary hearing over the course of several dates, during which the Petitioner presented his own testimony, that of the two witnesses he claimed should have been called at his motion to suppress, and the four attorneys who had represented him from the pretrial stage through his direct appeal.

The Petitioner testified that he told suppression counsel and first counsel about Rodney Foster, a supervisor at the juvenile detention center who could have testified concerning his intoxication the night after his interview with police.  However, suppression counsel did not call Mr. Foster to testify at the suppression hearing, and first counsel "never had any kind of defense for anything, so that conversation never went past her telling me to sign the plea."

The Petitioner then discussed what it was like to be under the influence of Xanax and said that at the time of the offense, he was using it "[a]lmost every day if not every day."  On the day of the interview, he took two bars of Xanax at a time until he blacked out, and he was also smoking marijuana that day.  After he blacked out, the next thing the Petitioner remembered was waking up in the juvenile detention center and not knowing why he was there.  The Petitioner claimed to have no recollection of the day the victim was shot, his interview with the police, or admitting in the interview to shooting the victim.  The Petitioner said that he had since watched the videotape of his interview and believed that a significant indicator of his intoxication was "[m]e asking them how we got down there."

---

[1] The Petitioner's claims are against four different attorneys.

Dr. James Walker, a clinical psychologist, testified that Xanax is a sedative that helps people combat anxiety and helps them go to sleep when they are having trouble sleeping. He said that when a person referred to a "bar" of Xanax, that typically meant a 2-milligram dose. He surmised that a person who took 8 milligrams recreationally "would be knocked on their back by that dosage of Xanax[.]" He speculated that a milligram of Xanax was roughly equivalent to four shots of alcohol. Dr. Walker explained that Xanax had a half-life of four to six hours, meaning the amount of time it takes the body to metabolize half of the substance. In his opinion, someone who took 8 milligrams of Xanax would still be feeling its effects very strongly after six hours. Dr. Walker said that, even after twelve hours, the person would still have a substantial amount of the drug in his or her system. However, Dr. Walker acknowledged that a person could develop a tolerance to Xanax, similarly to alcohol.

Dr. Walker never met with the Petitioner, but he reviewed the videotape of the Petitioner's confession and, in his view, thought the Petitioner was "clearly [se]dated to some degree during th[e] interview." He said that the Petitioner appeared to be sleepy, spoke slowly, and made mistakes about the circumstances leading up to his arrival at the police station. In sum, he did not "seem to be really in command of his faculties entirely." However, he could not say definitively that the Petitioner was under the influence during the interview. Additionally, asked whether the Petitioner lacked capacity to understand the questions being asked of him in the interview, Dr. Walker replied, "I have no opinion on that issue."

Dr. Walker acknowledged to having substance abuse problems in his past but said that he had been clean from cocaine for fifteen months. He said that his psychology license in Tennessee was presently active, but then said that he believed it was still on a probationary status. Dr. Walker maintained that his struggle with addiction did not influence his opinion concerning the Petitioner's intoxication, aside from "hav[ing] an inside as to how people react on [intoxicating substances]."

Rodney Foster, a supervisor at the juvenile detention center, recalled that he testified at the Petitioner's trial. He remembered speaking with two attorneys, whom he believed worked for the State, prior to his testifying. He did not recall speaking with any defense attorneys, although he was called to testify by the defense. Mr. Foster stated that the Petitioner was intoxicated when he was brought to the juvenile detention center after his interview with the police. Mr. Foster said that the Petitioner told him that he had taken seven bars of Xanax. Because of the Petitioner's disclosure, Mr. Foster "put him on close observation for the . . . remainder of the night," with an officer checking on him every thirty minutes. Mr. Foster said that the Petitioner's demeanor was consistent with intoxication; he was "bouncing around, going back and forth[, and] . . . slurring his speech, saying the same thing over and over an[d] over." On cross-examination, Mr. Foster said

that his testimony at trial was true and that the Petitioner was responsive to questions and able to follow directions.

The attorney who represented the Petitioner at the suppression hearing testified that he met with the Petitioner on a regular basis in preparation of the case. Suppression counsel filed a motion to suppress the Petitioner's videotaped confession to the police on grounds that it was not knowingly and voluntarily given due to intoxication. At the hearing, the State presented testimony from Detective Haney, who said that the Petitioner did not appear to be intoxicated, as well as two videotapes – one of the Petitioner's interview with police and the other of the codefendants in a room interacting with one another. The Petitioner testified on his own behalf at the hearing.

Suppression counsel stated that he did not consider presenting expert testimony because he was not aware of any medical way the Petitioner's level of intoxication at the time of the confession could be determined. Asked if it would have been helpful to have a medical expert to review the footage to give a medical opinion on the appearance of intoxication, suppression counsel said, "maybe perhaps." Shortly after the motion to suppress was denied, the Petitioner became displeased with counsel's estimation of his chances at trial and told counsel that he would not listen to him. Suppression counsel, therefore, withdrew from the case.

The Petitioner's first trial counsel testified that she represented the Petitioner for about a year, essentially from after the suppression hearing through trial. She attempted to withdraw from the case several times due to the Petitioner's displeasure with her assessment of the evidence against him. However, her requests were denied, and she continued to prepare for trial.

First counsel testified that she reviewed the Petitioner's videotaped confession to the police. She explored the possibility of filing another motion to suppress but determined that "the issue had been decided just not in a way that [the Petitioner] wanted." First counsel said that she did not consult a medical expert or obtain an opinion from anyone else as to the Petitioner's intoxication because that issue was handled at the suppression hearing, and she told the Petitioner "that if he was convicted, it was something we would appeal." Asked if she thought that medical testimony should have been sought at the suppression hearing, first counsel said, "I don't know that that's for me to say or decide, but is it something that I have ever done, I don't think so."

When questioned about obtaining medical experts for trial, first counsel recalled that she had obtained medical experts for trial before, but that was usually concerning a mental health issue which was not the case with the Petitioner. First counsel expounded that "[u]sually experts go to an element of the case or to negate mens rea, and . . . I'm not

- 4 -

sure I would have done anything differently, but it's certainly something that could have been done." She summarized, "I felt like it's a situation where it was an adverse opinion to [the Petitioner] and you can't just keep litigating issues because we don't like them." With regard to the Petitioner's videotaped confession, first counsel elaborated:

> [G]enerally when I have a confession in cases, I'm trying as a general rule . . . to call as little of attention to that as possible. If that . . . works within my trial strategy, I do not like the jury to hear and spend a long amount of time on people's confession. Only bad things happen when they do that.

She said that, "I don't think it's good for the jury to spend hours and hours and days listening to my client[] confess to murder."

The Petitioner retained private counsel approximately two weeks before trial, and first and second counsel represented the Petitioner together. First counsel recalled that she made all of her case materials available to second counsel, including the videotape of the Petitioner's confession. First counsel remembered that second counsel came to her residence one evening to review materials and discuss the case. First counsel felt that she was fully prepared for trial. However, the Petitioner made "it . . . clear [to her] that [she] was not wanted or welcome" at trial, and second counsel handled the majority of witness questioning.

First counsel was asked about Dr. Walker, the psychologist the Petitioner had testify on his behalf at the evidentiary hearing. First counsel said that she was familiar with Dr. Walker from other cases and "would probably not hire him again." She elaborated that Dr. Walker had battled addiction issues, and issues with that and his licensing had been brought out on cross-examination in those other cases.

The Petitioner's second trial counsel recalled that he entered his first appearance in the case a month or two before the scheduled trial date. He said that he accepted the representation with the hope that he would be granted a continuance. He sought one based on the significant amount of discovery in the case and lack of time to prepare, but his request was denied. The trial court asked if he wanted to remain on the case given the denial of a continuance, and second counsel said that he did.

Second counsel recalled that another attorney had litigated a motion to suppress the Petitioner's statement, and second counsel said that "it appeared [suppression counsel] did a pretty decent job." Second counsel stated that the Petitioner claimed that he had been taking Xanax, using marijuana, and drinking when he was interrogated. When asked if he would have used an expert at the suppression hearing to contradict Detective Haney's testimony regarding the Petitioner's lack of intoxication, second counsel said, "Well, I've

never thought about that. That's the first time I have asked that question. And but presumably so." He agreed that expert medical proof regarding the Petitioner's intoxication would have been an important part of litigating the suppression issue. However, second counsel admitted that he, himself, had never gotten an expert to testify about intoxication during a police interview.

Second counsel said that he and first counsel agreed in advance as to which witnesses they would examine at trial. Second counsel questioned Detective Haney, who admitted that the Petitioner told officers that he had taken Xanax and used marijuana. In preparation for his cross-examination of Detective Haney, second counsel reviewed the case file, the trial court's order on the motion to suppress, and videotapes of the Petitioner's interrogation and his discussion with his codefendants. Second counsel did not recall reviewing a transcript of the suppression hearing, but he believed that he was prepared for cross-examination. In second counsel's view, "it was portions of the video that were problematic for [the Petitioner]," other witnesses identified the Petitioner and there was circumstantial evidence as well.

Second counsel recalled interviewing an officer at the juvenile detention center who testified that the Petitioner was still impaired when he returned from the interrogation and presenting that officer's testimony at trial.

The attorney who represented the Petitioner on appeal testified that she thought there were problems with the Petitioner's "alleged-so-call confession." After watching the videotape of the Petitioner's confession, she believed "that he was very clearly . . . intoxicated[.]" She said that in her view, medical proof related to Xanax would have been helpful for the Petitioner's case at the suppression hearing. Appellate counsel acknowledged that she failed to include a transcript of the suppression hearing in the record on appeal and that it would have been helpful to include one. Appellate counsel admitted that she had no training in psychology or substance abuse and offered her opinion as to the Petitioner's intoxication based solely on what she observed on the videotape.

Following the conclusion of the proof, the post-conviction court entered a lengthy order denying the petition. The court determined that as to each of his allegations, the Petitioner had failed to prove deficient performance, prejudice, or both. The court concluded that the Petitioner was not deprived of his constitutional right to effective assistance of counsel.

## ANALYSIS

On appeal, the Petitioner argues that: (1) his counsel at the suppression hearing was ineffective for failing to put on evidence to corroborate his testimony concerning his

intoxication; (2) his counsels at trial were ineffective for failing to communicate with him, review the transcript from the suppression hearing, and present a cohesive theory of defense; and his appellate counsel was ineffective for failing to include a transcript from the suppression hearing in the record on appeal.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a post-conviction court's application of the law to the facts of the case is de novo, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness

under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). Moreover, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim.").

The Petitioner first alleges that his counsel at the suppression hearing was ineffective because he was highly intoxicated when he was interviewed by the police but his counsel did not put on evidence to corroborate his testimony concerning his intoxication. He specifically avers that counsel should have presented medical expert testimony on the effects of Xanax, as well as testimony from an officer at the juvenile detention center who observed the Petitioner after his statement to police.

In addressing this claim, the post-conviction court first acknowledged that the Petitioner presented the testimony of Dr. Walker and Mr. Foster at the evidentiary hearing to support his assertion. The court determined that while Dr. Walker and Mr. Foster could have provided testimony that would have been helpful to the Petitioner's position that he was intoxicated at the time of the interview, the failure to call an expert or corroborating witness at a pretrial evidentiary hearing did not fall outside the range of competence demanded of attorneys in criminal cases. The court observed that it was reasonable for counsel to believe that the proof he offered at the suppression hearing, the Petitioner's testimony and videotape of the interview, adequately supported his contention that the Petitioner was intoxicated.

The court continued that, even assuming *arguendo* that counsel was deficient for failing to call such witnesses, the Petitioner was not prejudiced by the failure. The court noted that on direct appeal, this court considered Mr. Foster's testimony in its analysis affirming the denial of the motion to suppress. The court also determined that even if the court had found the Petitioner to be under the influence at the time of the interview, the Petitioner's statements still would have been admitted because the totality of the

circumstances as outlined in State v. Callahan, 979 S.W.2d 577, 583 (Tenn. 1998), indicated that the Petitioner knowingly and voluntarily waived his Miranda rights.

On direct appeal, this court observed that "Mr. Foster's testimony confirmed that the [Petitioner] was capable of narrating events and that he was not so intoxicated that his confession was not the product of a free mind or rational intellect." Ryan D. Buford, 2015 WL 9488975, at *9. At the evidentiary hearing, Dr. Walker testified that he could not say definitively that the Petitioner was under the influence during the interview, and he "ha[d] no opinion on th[e] issue" of whether the Petitioner lacked capacity to understand the questions being asked of him in the interview. The record supports the post-conviction court's denial of relief as to this allegation.

The Petitioner next alleges that his first trial counsel failed to adequately communicate with him and, therefore, most of his trial was handled by second counsel who did not have sufficient time to prepare. He claims that second counsel "rushed through his trial preparation" and, as a result, failed to review the transcript or listen to the recording of the suppression hearing before cross-examining Detective Haney, one of the State's key witnesses. The Petitioner asserts that he was prejudiced because "Detective Haney's testimony at trial was inconsistent with his testimony at the suppression hearing, and thus his attorneys missed an opportunity to impeach a key witness for the State."

In addressing this claim, the post-conviction court found that trial counsels were not deficient for failing to obtain a transcript of the suppression hearing because while such transcript could "potentially be . . . useful in some cases, the . . . failure to secure such . . . [wa]s [not] beyond the range of competence, particularly in a case such as this one where there is a video recording of the event that was the focus of that prior evidentiary hearing."

The court continued that, even assuming *arguendo* that counsel was deficient for failing to secure a copy of the transcript, the Petitioner did not prove that he was prejudiced by the failure. The court observed that the "majority of what the Petitioner alleges are inconsistencies between Detective Haney's testimony at trial and his testimony at the suppression hearing are not inconsistent at all." The court reviewed the alleged discrepancies and noted that only four of Detective Haney's answers were actually inconsistent. The court determined that three of the inconsistencies were minor and that the failure to question Detective Haney concerning them was not prejudicial. The court classified the final inconsistency, whether the Petitioner mentioned Xanax in his interview, as "more significant" than the others but still determined that the Petitioner was not prejudiced by counsels' failure to question Detective Haney on that point. The court concluded that even if counsels had a copy of the transcript from the suppression hearing, "it would likely have been detrimental for them to attempt [to] impeach Detective Haney with the fact he previously testified the Petitioner never mentioned having taken Xanax."

The court poignantly summarized:

[W]hile the [c]ourt recognizes that it can be beneficial to impeach the credibility of a witness's memory through the use of prior inconsistent statements, the [c]ourt does not find that the failure of trial counsel to do so with Detective Haney undermines the [c]ourt's confidence in the verdict. None of the inconsistencies in Detective Haney's testimony were great importance to the key issues in the case. Further, while Detective Haney's testimony provided context for the jury to better understand the investigation, his testimony was far from the most damaging evidence against the Petitioner. The other testimony against the Petitioner was very strong, particularly in light of the recorded confession of the Petitioner and the testimony of one of the Petitioner's co-defendants implicating him in the case. Thus, even if the [c]ourt were to find that [counsels] were deficient for failing to secure a transcript, the [c]ourt does not find that failure prejudiced the Petitioner.

The record supports the post-conviction court's determinations on this issue. Second counsel testified that portions of the videotape of the Petitioner's interview with the police "were problematic" for the Petitioner, and one of the codefendants testified against the Petitioner as well. The Petitioner has not shown that any increased cross-examination of Detective Haney would have likely affected the verdict.

The Petitioner lastly alleges that appellate counsel was ineffective for failing to include a transcript from the suppression hearing in the record on direct appeal. He asserts that the failure to include the transcript prevented this court from considering the denial of his motion to suppress his statement on direct appeal. He also asserts that appellate counsel's failure to include the transcript "shows that she had not reviewed [it] herself."

In addressing this claim, the post-conviction court found "it is clear that [the] failure [to include the transcript] constitutes deficient performance as it falls below the range of competence expected of an appellate attorney." However, the court determined that the Petitioner did not meet his burden of establishing that he was prejudiced by the failure. The court observed that despite saying that it presumed that the lower court's findings on the suppression issue were correct, this court "still conducted a thorough review of [the lower court]'s findings in light of the evidence it had in the record." The post-conviction court noted that on appeal, this court considered the lower court's findings, which "included a 'thorough summary of the evidence,'" the two videos of the Petitioner's interviews and unofficial transcripts of those videos, as well as the testimony of Mr. Foster – an officer at the juvenile detention center. The post-conviction court concluded that

"there is nothing in [the direct appeal] opinion that suggests the decision of the Court of Criminal Appeals might have been different had the transcript been included[.]"

The record supports the post-conviction court's determinations on this issue. This court on direct appeal afforded the trial court's findings a presumption of correctness but went on to consider those findings, the videotape of the Petitioner's interview with the police, and evidence from trial in determining whether the Petitioner waived his rights knowingly and voluntarily. See Ryan D. Buford, 2015 WL 9488975, at *8-9. We discern no reasonable probability that the inclusion of the transcript in the record on direct appeal would have led to a different result.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the denial of post-conviction relief.

_____
ALAN E. GLENN, JUDGE